UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN MIDORI ARIAS RIVERA, | Case No.: 3:26-cv-03587-JES-SBC |
| Petitioner, | |
| v. | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| CHRISTOPHER J. LaROSE, Senior Warden Otay Mesa Detention Center; TODD BLANCHE, Acting United States Attorney General; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; PATRICK DIVVER, ICE San Diego Field Office Director, in their official capacities, | **[ECF No. 1]** |
| Respondents. | |

Before the Court is Petitioner Helen Midori Arias Rivera's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), filed on June 17, 2026. ECF No. 1 ("Pet."). Pursuant to the Court's order to show cause, Respondents filed a return to the petition (ECF No. 4, "Return") and Petitioner filed a Traverse (ECF No. 5). For the reasons set forth below, the Court **GRANTS** the petition.

//

//

1

## I.    BACKGROUND

The following facts are alleged in the Petition and not contested by Respondents. Petitioner, a citizen of Peru, entered the United States on December 21, 2023. Pet. ¶ 28. She was detained and had a credible fear interview with a positive credible fear determination. *Id.* Around December 30, 2023, Petitioner was released from detention on her own recognizance and served with a Notice to Appear for a removal proceeding. *Id.* Removal proceedings began on January 9, 2024, and in April 2024, Petitioner filed an asylum application. *Id.* ¶ 29. On March 25, 2026, the Immigration Judge ("IJ") denied Petitioner's application for relief under the United Nations Convention Against Torture and ordered removal to Peru. *Id*. On April 23, 2023, Petitioner filed an appeal to the Board of Immigration Appeals ("BIA"). *Id.* The BIA appeal is pending. *Id.*

Throughout her removal proceedings, Petitioner attended each of her check ins and even after the IJ ordered her removal, Petitioner appeared for a check in and had a GPS ankle monitor placed on her and was allowed to go home. *Id.* ¶ 30. Around June 5, 2026, Petitioner was in a motor vehicle that was stopped by Border Patrol agents and was detained. *Id.* ¶ 30. Petitioner was sent to Otay Mesa Detention Center, where she remains today. *Id.*

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview

3:26-cv-03587-JES-SBC

of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III.   DISCUSSION

In her petition, Petitioner argues that her re-detention and the manner in which it was carried out violated the Immigration and Nationality Act and Procedural Due Process. Pet. ¶¶ 32-35. Respondents argue only that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b), but correctly concede that courts have consistently held otherwise. *See generally,* Return. The Court does not find that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b) for the reasons set forth in *Martinez Lopez v. LaRose*, No. 25-cv-2717-JES-AHG, 2025 WL 3030457 (S.D. Cal. Oct. 30, 2025). The Court, therefore, elects to follow the reasoning stated therein and incorporates it by reference. The Court analyzes Petitioner's Procedural Due Process claim below.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of release. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.* Courts have recognized that typically, the term "released on their own

3:26-cv-03587-JES-SBC

recognizance" refers to conditional parole. *Id.*; *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)").

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners under these forms of parole. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process). Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

4

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034-35 (N.D. Cal. 2025). Several district courts have followed suit and found due process violations where the petitioners in the cases were specifically identified to be released under Order of Release on Recognizance with an accompanying I-220 form. *See, e.g., C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) (finding due process violation where petitioner was originally released on OREC).

The Court agrees with all the foregoing courts and similarly holds that Respondents created a liberty interest in Petitioner when they granted her release. *See* Pet. ¶ 1. As this Court explained in *Sanchez v. LaRose,* due process requires not only notice and opportunity to be heard regarding the revocation of such an interest, but also that the notice and opportunity be meaningful. No. 25-CV-2396-JES-MMP, 2025 WL 2770629 at *3 (S.D. Cal. Sept. 26, 2025). Petitioner alleges that she has not been provided notice or opportunity to be heard regarding the revocation of his parole. Pet. ¶ 35. Further, without changed circumstances or another factor justifying re-detention, any notice and opportunity to be heard that did occur could not have been meaningful. *See Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025) ("An alien's opportunity to be heard regarding a change in his status is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's supervised release 'at any time' on a discretionary, but not unlimited, basis."). Petitioner alleges, and Respondents do not contest, that there were no changed circumstances or individualized findings in Petitioner's case justifying her re-detention. *Id.* at 10. Accordingly, the Court finds that Respondents violated Petitioner's due process rights when they re-detained her in June of 2026.

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and does not reach the remainder of Petitioner's claims as the requested relief is granted. Because the Court grants the petition on the Due Process grounds and concludes that Respondents' revocation of Petitioner's supervised release violates procedural due

3:26-cv-03587-JES-SBC

process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of her preexisting release that existed at the time she was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **July 21, 2026**, confirming that Petitioner has been released. Petitioner's Motion to Expedite filed on July 14, 2026, is **DENIED** as moot.

     **IT IS SO ORDERED.**

Dated: July 14, 2026

Honorable James E. Simmons Jr.
United States District Judge

3:26-cv-03587-JES-SBC